Filed 10/26/23  Canyon View Limited v. Bank of America CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| CANYON VIEW LIMITED,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>BANK OF AMERICA, N.A., et al.,<br><br>Defendants and Appellants. | B312259<br><br>(Los Angeles County<br>Super. Ct. No. PC057199) |

APPEAL from an order of the Superior Court of Los Angeles County, Stephen P. Pfahler, Judge.  Affirmed in part and reversed in part with directions.

Greines, Martin, Stein & Richland, Robin Meadow and Jeffrey Gurrola for Plaintiff and Appellant.

McGlinchey Stafford and Sanford Shatz for Defendants and Appellants.

Plaintiff and appellant/cross-respondent Canyon View Limited, dba Canyon View Estates (Canyon View) owns and operates a manufactured home park, where it leases home site lots to occupants who purchase and install mobilehomes and other improvements on permanent foundations. Canyon View filed a quiet title action against defendants and respondents/cross-appellants Bank of America, N.A. (BOA) and The Bank of New York Mellon (BONY) (collectively, the BONY parties), alleging that they recorded documents clouding Canyon View's title to a mobilehome in Canyon View's mobilehome park that Canyon View had purchased in a public sale pursuant to the Mobilehome Residency Law (MRL) (Civ. Code, § 798 et seq.).[1] After the court entered a stipulated judgment quieting title to the home in Canyon View's favor, Canyon View sought attorney fees and costs under section 798.85, the fees and costs provision of the MRL. The court initially denied Canyon View's fees motion on the basis that the action did not "aris[e] out of the [MRL]." (§ 798.85.) We reversed this denial in a partially published opinion, holding the instant action arose out of the MRL, because it was necessary to perfect Canyon View's MRL-based right to free and clear title to the home. (See *Canyon View Ltd. v. Lakeview Loan Servicing, LLC* (2019) 42 Cal.App.5th 1096 (*Canyon View I*).) Because the trial court had not conducted a proper lodestar analysis or calculated the amount of reasonable attorney fees and costs to award under the MRL, we instructed it to do so upon remand, and further to enter a fees and costs award consistent with *Canyon View I*.

---

[1] Unless otherwise specified, all subsequent statutory references are to the Civil Code.

The fees and costs award the court issued on remand from *Canyon View I* is the subject of the instant appeal and cross-appeal. Canyon View argues that the court abused its discretion by applying an approach to calculating the fees award that the court had applied in another action involving Canyon View, an approach we have since determined lacks any reasonable basis and constitutes an abuse of discretion. (See *Canyon View Limited v. Lakeview Loan Servicing, LLC* (Aug. 30, 2022, B311313) [nonpub. opn.] (*Canyon View II*).) Canyon View argues the approach constitutes an abuse of discretion here for the reasons we outlined in *Canyon View II*, and because it is based on evidence in that separate action, rather than evidence in the instant action. We agree.

The BONY parties argue that the court erred in awarding any fees and costs under the MRL, because, for various reasons, the action was not necessary to perfect Canyon View's MRL-based right to hold title free and clear of any prior liens held by the BONY parties. We reached the opposite conclusion on this precise issue in *Canyon View I*. Thus, the law of the case doctrine prevents us from considering these arguments. The BONY parties do not argue that an exception to the law of the case doctrine applies, nor do we conclude any exception is applicable.

The BONY parties further argue that, even assuming Canyon View is entitled to recover any fees and costs under the MRL, the court abused its discretion by awarding fees for work beyond what was necessary to vindicate any MRL-based rights. We agree that whether work is necessary to vindicate an MRL-based right is a relevant factor in assessing reasonable attorney

3

fees and costs under the MRL. But this consideration does not support a reduction in the instant award.

Finally, we find unpersuasive the BONY parties' challenge to the court's award of costs, as that challenge is based on Code of Civil Procedure sections that do not govern costs under the MRL.

Accordingly, we affirm the court's order awarding Canyon View costs. We, however, reverse the award of attorney fees, and instruct the court to award fees using a lodestar analysis based only on the evidence presented in this case.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.     MRL Background

We first summarize the provisions of the MRL most relevant to the instant appeal.

Article 6 of the MRL (§§ 798.55–798.62) creates procedures whereby mobilehome park management may sell or dispose of abandoned mobilehomes. (See § 798.61.) Specifically, mobilehome park "management" must properly notice all owners and lienholders of a mobilehome of management's intention to file a petition for declaration of abandonment. (*Id*., subds. (b) & (c).) If petitioner at such a hearing makes the required showing, the court "shall" issue a judgment of abandonment. (*Id*., subd. (d)(2).) After obtaining such a judgment, management may "dispose of" the mobilehome (*id*., subd. (f)) or sell it via a public sale (*id*., subd. (e)(2)), in compliance with MRL procedures. (*See id*., subds. (e) & (f).) If management chooses to sell the home, the purchaser in such a sale takes the home "free of any

4

prior interest . . . or lien."[2]  (§ 798.61, subd. (e)(4).)  The MRL expressly permits management to purchase a mobilehome at such a sale, and to offset from its bids the amount management is owed under the lease.  (*Id.*, subd. (e)(2).)

Article 8 of the MRL (§§ 798.84–798.88) contains an attorney fees and costs provision, which requires a court to award reasonable attorney fees and costs to the "prevailing party" "[i]n any action arising out of the provisions of this chapter [i.e., the MRL]."  (§ 798.85.)

### B.  Factual and Procedural Background Leading To *Canyon View I*

#### 1.  *Abandonment of Subject Property*

In October 2005, Dominique Reese and Donna Worthington-Reese purchased a mobilehome on lot 332 in Canyon View Estates and entered into a long-term lease with Canyon View on that lot.  They financed the transaction by obtaining a loan secured by a deed of trust encumbering both the mobilehome and the leasehold interest.  That deed of trust was later assigned to BONY and serviced by BOA.

In 2007, the Reeses breached their lease by failing to make payments.  Canyon View issued the requisite MRL notices to the Reeses and all lienholders, and no one cured the defaults under the lease.

---

[2] The one exception provided for in the MRL is a lien of the state for nonpayment of the fees and penalties under Health and Safety Code section 18116.1.  (§ 798.61, subd. (e)(4).)

5

### 2. *Canyon View's Purchase of the Property and Subsequent Recordings*

In April 2009, Canyon View obtained a judgment of abandonment to the Reeses' mobilehome. At a public sale on May 7, 2009, Canyon View purchased the mobilehome. Under section 798.61, subdivision (e)(4), the sale extinguished all liens on and interests in the mobilehome. A grant deed conveying the mobilehome to Canyon View was recorded on February 23, 2010.[3]

On March 19, 2010, the trustee of the deed of trust held by BONY recorded a notice of default and election to sell under the deed of trust. This notice claimed BONY held a lien on the subject mobilehome. At a September 30, 2010 foreclosure sale, BONY purchased the mobilehome. On October 12, 2010, the trustee's deed upon sale was recorded.

### 3. *Canyon View's Lawsuit Against the BONY Parties and Stipulated Judgment Quieting Title*

In February and March of 2016, Canyon View made written demands of BONY and the trustee under the deed of trust, as well as counsel for BOA, that they remove the cloud on Canyon View's title to the mobilehome. Communications between the parties continued through June 2016 without resolution.

---

[3] The MRL does not address leasehold interests of abandoned mobilehomes, and the grant deed Canyon View recorded following the public sale does not reference the leasehold interest in the property. On appeal, neither party relies on the fate of the leasehold interest, nor does it appear relevant to the issues raised on appeal.

On July 22, 2016, Canyon View sued the BONY respondents to quiet title, seeking declaratory relief and removal of the cloud on title, and for relief under the Unfair Competition Law (Bus. & Prof. Code, § 17200). Several months into the litigation, in December 2016, BOA, as BONY's agent, recorded a notice of rescission of the trustee's deed to BONY, noting that the foreclosure sale resulting in the trustee's deed was "conducted in error." In this document, BONY "rescind[s], cancel[s], and withdraw[s] [the] trustee's deed upon sale," but notes that the "deed of trust shall remain in force." (Capitalization omitted.)

Several months after that, on May 3, 2017, the parties entered into a stipulation for judgment. The stipulated judgment entered by the court provided that, as a result of Canyon View purchasing the home at the public sale, Canyon View owned the home, and the BONY parties had no lien on or interest in either the home or the related leasehold. The judgment provided that Canyon View had the right to seek, and the BONY parties had the right to oppose, attorney fees and costs pursuant to the MRL, section 798.85.

### 4. *Canyon View's Initial Efforts to Obtain Attorney Fees*

The trial court denied Canyon View's subsequent motion for fees and costs on the ground that the lawsuit did not arise out of the MRL, because "the MRL was not designed to cover disputes between mobilehome park owners and third party lienholders." The court also noted that "[e]ven if this action did arise out of the provisions of the MRL, the attorneys' fees and costs requested are not reasonable under the circumstances of this case," and all costs and fees should be denied on this basis as well. The court

7

offered no reason why the fees and costs requested were unreasonable.

### C. *Canyon View I* Appeal

Canyon View appealed the trial court's denial of its fees and costs motion. We consolidated that appeal with Canyon View's appeals from the denials of attorney fees and costs in three other quiet title actions because they each involved the issue of whether the lawsuit at issue "ar[ose] out of the [MRL]." (§ 798.85.) These actions were against three other groups of entities that at one time held liens on three other mobilehomes located in Canyon View's mobilehome park: Lakeview Loan Servicing, LLC (Lakeview), Ocwen Loan Servicing, LLC and Power Default Services, Inc. (Ocwen), and Household Finance Corporation of California and HSBC Mortgage Services Inc. (Household). We shall refer to these other actions consolidated in *Canyon View I* as the Lakeview action, the Ocwen action, and the Household action.[4] Like the defendants in this case, the defendant entities in these three actions recorded documents that asserted liens on and/or security interests in the properties at issue after Canyon View had purchased them via MRL-regulated

---

[4] We previously granted the BONY parties' motion to augment the record to include: (1) the record from *Canyon View I*; (2) the record from the Lakeview action; (3) the record in a currently pending appeal regarding another case brought by Canyon View (not consolidated in *Canyon View I*), case No. B312642; and (4) certain documents from the proceedings in the Household action on remand from *Canyon View I*, presided over by a different bench officer than the officer presiding over the instant action and Lakeview action.

8

proceedings. Despite the similarities in the general fact pattern and legal issues involved across all four actions, the facts of each matter were distinct—different loans by different banks to different defaulting mobilehome owners. The actions were separate at the trial court level, and divided between two trial judges (although the same judge presided over the Lakeview action and the instant action).

In a partially published opinion, *Canyon View I*, we reversed the courts' denials of attorney fees in the Household action, the Lakeview action, and the instant action. (*Canyon View I, supra*, 42 Cal.App.5th at p. 1118.) In so doing, we held in the published portion of the opinion that (1) "an action need not involve the mobilehome park management-resident relationship or landlord-tenant issues in order for it to 'arise out of' the MRL[,]" and (2) when litigation is "necessary to perfect [a plaintiff's] right to free and clear title under the MRL, [that action] ar[ises] out of the MRL, and . . . the prevailing party [in such an action], is entitled to recover its reasonable attorney fees and costs." (*Id.* at p. 1100.) As to the latter point, we explained: "The MRL creates the right of a purchaser at an abandonment or warehouse lien sale to take title 'free of any prior interest, including any security interest or lien.' [Citations.] Canyon View was 'required' to sue to 'perfect' that right on the facts of the Lakeview, BONY, and Household actions [citation], because the defendants in those actions refused to sufficiently correct recorded documents asserting a security interest in the subject mobilehomes after Canyon View purchased the homes via MRL abandonment or warehouse lien sale proceedings. Such documents are directly at odds with the right the MRL granted Canyon View to take title free of any security interests or

9

liens.  Thus, the 'foundation' of each of these cases [that is, the Lakeview action, the Household action, and the instant action] is that the defendant lienholders continued to assert, via documents they refused to cancel or clarify before Canyon View filed suit, security interests the MRL had extinguished. [Citation.] . . . [Citations.] . . . The defendants in [these actions] recorded documents that nevertheless continued to assert such interests.  Canyon View's actions to remove the cloud such documents created thus 'aris[e] out of' the MRL."  (*Canyon View I, supra*, at p. 1114.)

In the unpublished portion of *Canyon View I*, we reached a different conclusion with respect to the Ocwen action.  Because "[p]rior to Canyon View filing the Ocwen action, the Ocwen [parties] offered to file a full reconveyance and quitclaim deed," and because "[s]uch documents would have cleared all clouds based on any interest the Ocwen [parties] held or appeared to hold," Canyon View did not need "to sue the Ocwen [parties] to 'perfect' any rights Canyon View may have had under the MRL," unlike in the other three cases.

*Canyon View I* also considered whether Canyon View had established the second requirement for the MRL attorney fees and costs provision to apply:  that Canyon View was the "prevailing party" in each respective action, as defined by the MRL.[5]  (§ 798.85.)  We concluded that Canyon View was the

---

[5] Because we concluded that, in the Ocwen action, Canyon View had not established the other requirement for MRL attorney fees and costs to be recoverable—namely, that the action arose out of the MRL—we did not need to reach the issue of whether Canyon View was the prevailing party in the Ocwen action.

"prevailing party" in the instant action against BONY, the Lakeview action, and the Household action, because the stipulated judgments in these cases "were clearly in Canyon View's favor." (*Canyon View I, supra*, 42 Cal.App.5th at p. 1118; see § 798.85 [party is the prevailing party for the purposes of MRL attorney fees and costs "if the judgment is rendered in his or her favor or where the litigation is dismissed in his or her favor prior to or during the trial," absent an agreement to the contrary].) In so doing, we rejected the BONY parties' argument that "Canyon View [was] not the prevailing party because Canyon View did not receive a 'net economic recovery,' or because the BONY [parties] never attempted to enforce the rights the judgment extinguished." (*Canyon View I, supra*, at p. 1118.) Accordingly, we reversed the trial court's denial of attorney fees under the MRL in the instant action and the Household and Lakeview actions, but affirmed the denial of fees in the Ocwen action. (*Ibid.*)

We also reversed the trial court's order granting the BONY parties' motion to strike costs, because the court premised this order on the erroneous conclusion that the fees and costs provision of the MRL did not apply in the instant action. (*Canyon View I, supra*, 42 Cal.App.5th at pp. 1118–1119.)

In the *Canyon View I* disposition, we instructed the trial court to "determine, in a manner consistent with [the *Canyon View I*] opinion, the amount of reasonable attorney fees and costs to award Canyon View in each of these three actions." (*Canyon View I, supra*, 42 Cal.App.5th at p. 1119.) In the unpublished portion of the opinion, we observed that, "[a]lthough a trial court enjoys broad discretion in calculating what amount of fees and costs is reasonable under the circumstances, this discretion does

11

not permit a court to summarily determine, without engaging in an explicit analysis of the specific work performed or fees requested, that *no* attorney fees or costs are appropriate under a mandatory attorney fee[s] provision." We noted that we also "share[d] the trial court's concerns that the proceedings may have been more extensive than necessary, given that, for example, proceedings in the Lakeview action continued for several months after Lakeview filed a post-litigation reconveyance and quitclaim deed." We instructed the trial court that, "in order to properly assess the reasonableness of the fee amounts requested in light of these concerns, the court needed to examine the specific work described, determine which work was unnecessary or unreasonable, and decline to award fees and costs for that specific work. (See *Robertson v. Fleetwood Travel Trailers of California, Inc.* (2006) 144 Cal.App.4th 785, 818–819, citing *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1135–1136 [(*Ketchum*)][" '[o]ur Supreme Court has held that the lodestar adjustment method is the prevailing rule for statutory attorney fee awards to be applied in the absence of clear legislative intent to the contrary' "].)

### D. Canyon View's Second Round of Fees Motions Post-*Canyon View I*

On remand from *Canyon View I*, Canyon View filed a motion for attorney fees and costs in both the instant litigation and the Lakeview action.[6] Because the Lakeview and BONY

---

[6] Canyon View later changed counsel and the new counsel filed a notice of errata for the motion and a supporting request for judicial notice, correcting various errors.

12

actions were only consolidated for the purposes of the *Canyon View I* appeal, these two cases proceeded separately on remand, albeit before the same trial judge. Thus, the same trial judge separately considered each of the second fees motions in the two separate actions.

Canyon View's argument on appeal relates to the relationship between the court's approaches to calculating the fees award in response to the second fees motions in the Lakeview action and this action.

### 1. *Second Fees Motion in Instant Action*

Canyon View's second fees motion in the instant action sought the same prejudgment fees and costs that the trial court had previously denied, plus fees and costs incurred in connection with the *Canyon View I* appeal and fees and costs incurred in connection with Canyon View's second fees motion.

The fees Canyon View sought related to work performed by two firms: Norminton, Wiita & Fuster (NWF), trial counsel of record for Canyon View in the BONY action and the Law Offices of Edward A. Hoffman, associate appellate counsel who became lead counsel when NWF ceased operations while *Canyon View I* was pending. To support its request for fees, Canyon View submitted declarations of Thomas M. Norminton of NWF, NWF billing records, and a declaration of Edward Hoffman.

The Norminton declaration explained that NWF handled several other matters for Canyon View, including the three actions involved in the consolidated *Canyon View I* appeal. It addressed how Canyon View had isolated the fees associated with work on only the instant action, as opposed to the Lakeview, Ocwen, or Household actions. Specifically, Norminton explained that before August 2016, fees incurred in the instant case were

13

billed to a general matter number, but all entries related to the instant action were explicitly identified in the description as pertaining to the BONY parties or the lot at issue in the instant action. Norminton declared that this allowed NWF to identify entries pertaining to the instant action, and that all entries relating to cases other than BONY were excised from the billing records submitted to the court, based on which Canyon View calculated the amount of fees it requested for work before August 2016: "Those entries [unrelated to the BONY action] have been redacted . . . and the associated fees and costs have been deducted from the total [fee amount requested]."

Beginning August 2016, Canyon View's attorneys maintained a separate case file for the instant action and billed all related work to that matter. Entries billed to this matter formed the basis for Canyon View's fees request amount for NWF work starting in August 2016.

The declaration further recognized that some work performed in connection with *Canyon View I* related to all four cases consolidated in that appeal. The declaration explained that "[f]or this reason, [Norminton] instructed the attorneys and paralegals in the firm to apportion their time among the four appeals for tasks on common issues and separately bill their time to one case on matters not in common with the other three cases." To preserve the separateness of the four cases, "[a]fter the consolidation [of the four appeals], separate monthly fee[s] and cost[s] statements were prepared for Canyon View on each of the four consolidated appeals, just as these fee[s] and cost[s] statements had been prepared separately for each case in the litigation prior to the consolidation." (Capitalization omitted.) The Norminton declaration thus attested to the billing

14

records submitted in support of the fees request reflecting work specific to, or apportioned to, the instant action, and excluding any work on the related Ocwen, Lakeview, or Household actions.

Attached to the Norminton Declaration in support of Canyon View's fees motion were NWF invoices from February 2016 to the time the motion was filed. As described in the Norminton declaration, these invoices identified hours and fees as associated with the instant action against the BONY parties either by referencing the applicable lot name and/or the BONY parties and/or a billing number specifically assigned to the BONY action.

The total amount requested for NWF fees based on these records and the Norminton declaration was $153,730.09, later reduced to $153,596.84. This reduction of $133.25 resulted from Canyon View removing a .25 hour entry from its supporting billing records that the BONY parties had identified in an attorney declaration supporting their opposition as being unrelated to the BONY action, which Canyon View counsel then admitted on reply had been "mistakenly recorded for another case." Canyon View counsel further indicated he was "not aware of other such erroneous billings," and the BONY parties "[did] not identify any other mistaken billings."[7]

---

[7] In their opposition to the second fees motion, the BONY parties submitted a declaration of their counsel indicating he had reviewed the billing records and deemed them unnecessarily vague, such that he could not determine whether entries were erroneous, save the one .25 hour entry identified above and corrected by Canyon View.

15

Canyon View also requested $20,812.50 billed by attorney Hoffman. The Hoffman declaration supporting this request indicated that Hoffman had "not yet prepared an invoice for Canyon View," in part due to the COVID-19 pandemic work disruptions, and Canyon View did not submit billing records for Hoffman's work in support of its fees motion. Instead, Hoffman's declaration described his work on the *Canyon View I* appeal, which totaled 46 hours, and indicated that "[m]uch of the work applied to all four cases. The portions that were case-specific were spread quite evenly among the four cases, so [Hoffman] apportion[ed] 11.5 of these 46 hours to the . . . BONY case." The Hoffman declaration also described the total amount Hoffman expected to bill for his work on the second fees motion following the appeal, which totaled 22 hours. Finally, Hoffman outlined work he performed as a result of the BONY parties' petition for rehearing and request for publication.

Although the BONY parties raised numerous arguments in opposing Canyon View's fees and costs request, aside from the single entry for .25 hours noted above, they did not raise any concerns about specific work reflected in the billing records being for other cases or for other clients—for example, Lakeview, Ocwen, or Household.

### 2. *Second Fees Motion in Lakeview Action*

The same two firms, NWF and the Hoffman firm, performed the work for which Canyon View sought attorney fees in the Lakeview action, and Norminton and Hoffman each submitted a declaration to support the second fees motion in the Lakeview action. Norminton's Lakeview declaration described the exact same approach to calculating the fees requested that Norminton described in his declaration in the instant action.

16

Hoffman's Lakeview declaration likewise described the exact same approach to apportioning his work on *Canyon View I* as between the four consolidated actions that he had described in his declaration in the BONY action.  Hoffman declared that he spent the same amount of time on the Lakeview portion of *Canyon View I* that he had declared spending on the BONY portion of that appeal.  He also estimated he would spend 22 hours working on the second fees motion in the Lakeview action, the same number of hours he had anticipated in his BONY declaration he would spend on the second fees motion in the BONY action.

The NWF billing records Canyon View submitted to support the fees request in the Lakeview action—unlike those submitted in the instant action—included numerous "entries that, although . . . identified as associated with the Lakeview action, did not appear to be related to work on the Lakeview action. For example, the billing records reflected fees for tasks involving JPMorgan Chase Bank, Kondaur Capital, Ocwen, and California Reconveyance Company, and none of these entities is related to the Lakeview action."  Lakeview raised this issue in opposing Canyon View's fees request, and the court shared Lakeview's concerns "that this ' "excessive" billing undermine[d] the overall "credibility" of the requested fees.' "  "The court [ultimately] determined it needed additional information to address Lakeview's argument" and requested supplemental briefing regarding these apparently erroneous entries.  In its supplemental briefing, Canyon View included a supplemental Norminton declaration, in which Norminton acknowledged that he had erroneously identified several entries as reflecting work on the Lakeview action, when in fact the work billed was for

17

other matters.  Canyon View submitted updated billing records that removed these erroneous entries, which totaled $2,116.45, and adjusted the amount of fees requested in the second fees motion accordingly.

### E.     Rulings on Second Fees Motion

#### 1.     *Ruling in the Lakeview Action*

In its order on the second fees motion in Lakeview, the court "acknowledged that Canyon View's supplemental submissions 'provide[d] further clarification of the submitted billing entries for the litigation leading to judgment, appeal and current motion to recover fees.'  As to fees associated with the *Canyon View I* appeal, however, the court noted that '[w]hile counsel admits that not all fees were incurred equally given the uniqueness of the four defendants, the court finds the substantially overlapping arguments [on appeal] renders precise determination impractical.  The court therefore splits the appellate fees four ways,' awarding $19,589.27, a quarter of the NWF fees associated with *Canyon View I.*  [¶]  As to fees for prejudgment work, 'the court cite[d] to the prior raised concerns' . . . [about] ' "superfluous entries" ' and concerns about duplicative recovery of fees across the four actions.  The court concluded that '[e]ven with better clarification [via Canyon View's supplemental submissions], the court still finds the requested [prejudgment work] fees excessive.  While some of the discovery and demurrer work expressly applie[d] to the Lakeview . . . [action], the court remains unable to determine how much crossover work actually applied to the other defendants.  Given the similarities of the four actions and the inability to sufficiently parse out the required, unique work, the court divides the

18

previously represented balance . . . [of fees requested for prejudgment work] into quarters thereby reducing potential duplicative recovery on potential subsequent motions against the remaining three defendants as well. The division also reduces the questionable entries raised in the prior order . . . by [Lakeview].' "

Applying this approach, the court awarded (1) what it described as a quarter of the NWF fees Norminton had declared attributable to prejudgment work in the Lakeview action ($19,870.94), (2) what it described as a quarter of the NWF fees Norminton had declared attributable to the Lakeview action portion of *Canyon View I* ($19,745.66), (3) $18,000 for work on the first fees motion, and (4) $6,241.38 for work on the second fees motion. Lakeview did not contest Canyon View's request for costs in the Lakeview action, and the court awarded those as requested.

Because the court's award of fees associated with the *Canyon View I* work was based solely on this quartering of the amounts reflected in NWF bills, the court appears to have awarded no separate amount in the Lakeview action based on Hoffman's work on *Canyon View I*. The court did approve Hoffman's hourly rate.

### 2.     *Ruling in the Instant Action*

In ruling on Canyon View's second fees motion, the court rejected the BONY parties' argument that the action did not arise out of the MRL. The court correctly concluded that *Canyon View I* had decided the applicability of the MRL fees and costs provision in Canyon View's favor, and identified the lodestar method as the appropriate analytical framework for assessing

19

the amount of reasonable fees and costs to award Canyon View under section 798.85.

The court set forth the basic principles of a lodestar analysis. " '[T]he lodestar is the basic fee for comparable legal services in the community,' " a function of the reasonable amount of hours needed for legal work and a reasonable hourly rate for comparable attorneys in the relevant area. (*Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 154; see *Ketchum*, *supra*, 24 Cal.4th at p. 1132.) In a lodestar analysis, this lodestar fee " 'may be adjusted by the court based on' " a number of factors. (*Graciano, supra*, at p. 154; see *Ketchum, supra*, at p. 1132.)

The court found NWF and Hoffman's hourly rates were reasonable. It did not, however, determine the fees award based on any calculation involving the hourly rates or number of hours of work reflected in Canyon View's supporting documentation, but rather on the court's award of fees and costs in the Lakeview action. Specifically, the court's order provides as follows: "As addressed in [the] Lakeview [action], the court noted the deficiencies raised in the initial motion [in the Lakeview action], and the clarifications provided in the supplemental briefing [in the Lakeview action]. The court did not order supplemental briefing in the instant action, due to the parallels of the actions and prior clarification. The court therefore will award fees consistent with the prior order, but will reduce[ ] the amount awarded in that no additional fees were incurred by the parties in the instant hearing for supplemental briefing." "Consistent with the prior order [in the] Lakeview [action] . . . , the court finds the pro rata share of the appellate fees, $19,589.27"—the exact same amount the court awarded for *Canyon View I* work

20

in the Lakeview action—"reasonable" and "therefore award[ed] this amount for the appellate work in the instant action." Because this is the exact same amount of fees for appellate work that the court awarded in the Lakeview action despite Canyon View having requested different amounts for this work in the two actions, the "pro rata share of the appellate fees" to which the court's order in the instant action refers is a quarter of the appellate fees Canyon View requested i*n the Lakeview action*—not in the instant action.

As to fees for prejudgment work, Canyon View had "requested fees of $79,483.76 [in its initial fees and costs motion in the Lakeview action]. "Consistent with the prior order [in the Lakeview action], the court awards the pro rata share of $19,870.94"—that is, a quarter of the total amount requested in the Lakeview action for prejudgment work, and the same amount awarded under the court's quartering approach to the second fees motion in the Lakeview action.[8] This aspect of the award was thus also based on the amount of fees Canyon View requested in the Lakeview action, not the instant action. "As with the Lakeview motion, the court award[ed] an additional $18,000 in total motion fees" for work on the first fees motion. Finally, the court calculated fees for work on the second fees motion in the instant action based on a general comparison with work on the

_____

[8] The order actually refers to the amount requested in the "first motion" and does not specify whether it is referring to Canyon View's first fees motion in the Lakeview action or the BONY action. A review of the first fees motions in both of these cases reveals that the requested amount the court cited matches the total amount of fees (and costs) Canyon View requested for prejudgment work in the Lakeview action.

21

second fees motion in the Lakeview action, noting that "given less supplemental briefing [in the instant action] and the prior work [in the Lakeview action], the court reduces fees incurred for the instant motion to $2,000."

As with the Lakeview order, the court did not separately address the fees requested for attorney Hoffman, despite finding his hourly rate to be reasonable.

Finally, the court partially rejected the BONY parties' challenge to the costs portion of Canyon View's request, which the BONY parties argued was improper because Canyon View had not filed a renewed memorandum of costs in connection with its renewed fees request. The court found this challenge had merit "only [as] to costs awarded on the actual appeal following the remittitur itself, rather than the underlying costs incurred in the action and awarded to plaintiffs as prevailing parties under the [MRL]." The court thus awarded all costs Canyon View claimed to have incurred prior to the *Canyon View I* appeal.

In sum, the court awarded a total of $19,870.94 in fees for work leading up to the judgment, $18,000 for work on the first fees motion, $19,589.27 in fees for work on *Canyon View I*, and $2,000 in fees for the second fees motion, plus $4,010.47 costs.

### 3. *Appeals*

Canyon View appealed the order on the second fees motion in the instant action, resulting in the instant appeal. The BONY parties filed a cross-appeal from that same order.

Canyon View also appealed the order on the second fees motion in the Lakeview action, resulting in a separate appeal, *Canyon View II*.

22

**F.** ***Canyon View II* Decision Reversing the Court's Fees and Costs Order in the Lakeview Action[9]**

While the instant appeal was still pending, we issued an unpublished decision in the appeal from the fees and costs order in the Lakeview action: *Canyon View II*. We held that the court acted within its discretion "in finding not credible the evidence [Canyon View submitted to prove] that the NWF fees requested for prejudgment work and *Canyon View I* were all attributable to the Lakeview action," as opposed to the BONY, Ocwen, or Household actions. (Boldface omitted.) We further concluded, however, that, the court's concerns about overlap between the actions notwithstanding, there was no " 'reasonable basis' for the quartering approach the court applied to calculate the fee[s] award," because there was a "lack of correlation . . . between (1) the court's concern that the NWF bills at issue could contain not just fees for work on the Lakeview action, but at least some fees for work on one or more of the three related cases as well, and (2) the court's quartering reduction of the total requested fees. Whatever fees that request included, it did not include

---

**9** We hereby grant Canyon View's request that we take judicial notice of this unpublished opinion not as legal authority, but as a record of the court that provides relevant factual and procedural background for the arguments presented on appeal. (See *In re W.R.* (2018) 22 Cal.App.5th 284, 286–287, fn. 2 ["[c]itation of [a] prior unpublished opinion is permitted by California Rules of Court, rule 8.1115(b)(1) 'to explain the factual background of the case and not as legal authority' "]; *McArthur v. McArthur* (2014) 224 Cal.App.4th 651, 656, fn. 5 [may be appropriate to refer to unpublished appellate opinions "for purposes of factual context only"].)

23

the total NWF fees for all prejudgment and *Canyon View I* work in all four cases. There is thus 'no reasonable basis for the conclusion that the total hours included in the [25 percent of NWF's requested prejudgment and *Canyon View I* fee amount] . . . was even reasonably close to [25] percent of the total' NWF fees in all four cases for prejudgment work and *Canyon View I* work." (See *Mountjoy v. Bank of America, N.A.* (2016) 245 Cal.App.4th 266, 281 (*Mountjoy*) [abuse of discretion when no reasonable basis].) For these reasons, we reversed the court's order on the second fees motion in the Lakeview action and instructed the court "to enter a new order awarding Canyon View (1) a reasonable amount of attorney fees for NWF's prejudgment work in the Lakeview action and NWF's work in connection with *Canyon View I* attributable to the Lakeview action, plus (2) . . . the portion of attorney Hoffman's fees for work on the *Canyon View I* appeal attributable to the Lakeview action."

## DISCUSSION

Because of the significant overlap between the legal issues presented by Canyon View's appeal and the BONY parties' cross-appeal, we organize our discussion based on these issues, rather than based on which arguments were raised in the appeal versus the cross-appeal.

### A.    The BONY Parties' Forfeiture Arguments

As a preliminary matter, we reject the BONY parties' contention that Canyon View has forfeited an appeal from the order as against BOA by failing to separately address BOA in Canyon View's opening brief. The BONY parties argue that Canyon View's opening brief recognizes that BOA and BONY

24

are separate entities with separate roles in the underlying events, but refers to only BONY in its arguments. We are not persuaded that this warrants a forfeiture of Canyon View's arguments as against BOA when the brief is considered as a whole and in the larger context of the litigation.

First, Canyon View's opening brief challenges the trial court's fees and costs order, and that order was against both of the BONY parties. Canyon View's arguments apply equally to BONY and BOA. Neither the fees award nor the underlying judgment in this action differentiates between BONY and BOA in any way. The case law dealing with forfeiture for failure to raise an argument in appellate briefing is premised on the notion that an appellant bears the burden of "develop[ing] [its] argument [and] cit[ing] authority supporting it" (*DFS Group L.P. v. County of San Mateo* (2019) 31 Cal.App.5th 1059, 1086 [forfeiture of argument for failure to do so]), and that this burden is necessary to give the opposing party a meaningful opportunity to respond to the appellants' arguments. (See, e.g., *Nelsen v. Legacy Partners Residential, Inc.* (2012) 207 Cal.App.4th 1115, 1122 [no forfeiture where respondent "cannot reasonably claim prejudice from [court's] consideration of [appellant's] argument"].) Here, Canyon View's arguments are fully developed, its brief cites both the record and authority, and it is clear what Canyon View is challenging and on what basis. Even accepting the BONY parties' argument that Canyon View is referring solely to BOA in its arguments on appeal creates some sort of ambiguity, that ambiguity disappears in the context of Canyon View's arguments attacking the entirety of the fees and costs order under which BONY and BOA are jointly liable following a

stipulated judgment in which they are likewise jointly liable. There is no basis for forfeiture.

## B. *Canyon View I* Already Concluded That the Instant Action Arises Out of the MRL, and That the MRL Fees and Costs Provision Applies

The BONY parties challenge the award of *any* attorney fees and costs under the MRL, arguing that the MRL fees and costs provision does not apply in the instant action because the case does not "aris[e] out of the [MRL]." (§ 798.85.) The BONY parties characterize *Canyon View I* as addressing only whether "attorneys' fees may be awarded in an action arising under the MRL even if the case does not involve landlord-tenant issues," and not whether "this case [the BONY action] involved a dispute arising under the MRL—or that there was even a dispute." The BONY parties argue that we may therefore consider this question now, and urge us to answer it in the negative—that is, to conclude that Canyon View cannot recover any amount of fees or costs under section 798.85.[10]

---

[10] The BONY parties raise numerous bases on which they argue we should conclude that Canyon View did not need to file the instant action against the BONY parties in order to perfect its MRL-based right to clear title to the property. For example, they argue that, because BOA is a servicer and does not now have, nor has it ever had or claimed to have had, an interest in the property, a quiet title action against BOA was not necessary to clear title, so no fees are recoverable from BOA under the MRL. The BONY parties also argue that the action was not necessary to perfect MRL-based rights because the documents at issue did not actually affect Canyon View's title to the property or encumber it in any way, and because the statute of limitations

26

The express holding of *Canyon View I* directly contradicts the BONY parties' characterization of the issues *Canyon View I* considered. *Canyon View I* explicitly holds that "[t]he . . . BONY . . . action[ ] satisf[ies] the requirement of 'arising out of [the MRL]' as we interpret it" (*Canyon View I, supra*, 42 Cal.App.5th at p. 1114) and that the Canyon View is entitled to recover reasonable attorney fees and costs from the BONY parties under the MRL. (See *id.* at p. 1100 ["[b]ecause Canyon View's action[ ] against . . . the BONY respondents . . . [was] necessary to perfect Canyon View's right to free and clear title under the MRL, [it] arose out of the MRL, and Canyon View, as the prevailing party, is entitled to recover its reasonable attorney fees and costs"].)

"[U]nder the doctrine of the law of the case, the case may not go over ground that has been covered before in an appellate court." (*Sargon Enterprises, Inc. v. University of Southern California* (2013) 215 Cal.App.4th 1495, 1506, italics omitted.) Where, as here, "[a] prior appellate opinion expressly ruled . . . upon a party's entitlement to attorney's fees, the trial court is bound to follow the appellate court's expressions on the subject, under principles of law of the case." (*Benson v. Greitzer* (1990) 220 Cal.App.3d 11, 14, citing *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455; see *In re Marriage of Colvin* (1992) 2 Cal.App.4th 1570, 1582 [Court of Appeal's decision in

had run for the BONY parties to enforce its rights in any event. We need not assess the merits of these or any of the BONY parties' other arguments that the MRL fees and costs provision does not apply because, as we conclude above, our holding in *Canyon View I* already decided this issue.

attorney fees appeal "will be law of the case on [respondent's] entitlement to any fees"].)  We are similarly bound by *Canyon View I's* holding.  (See *City of Oakland v. Superior Court* (1983) 150 Cal.App.3d 267, 277 ["reviewing courts [must] follow the principles laid down upon a former appeal in the same case"].)  The law of the case doctrine applies even if a court "may 'be clearly of the opinion that the former decision is erroneous.' " (*Bell v. Farmers Ins. Exchange* (2004) 115 Cal.App.4th 715, 735.)  Thus, to the extent the BONY parties are arguing that this court incorrectly held that the instant action was necessary to perfect an MRL-based right, even if they are right—and we neither conclude nor imply that they are—it would not provide a basis for departing from *Canyon View I's* holding.  Application of the doctrine is subject to some recognized exceptions, including "where there has been an intervening or contemporaneous change in the law or the establishment of a new precedent by controlling authority" and "where its application will lead to a harsh or inequitable result."  (*Meyer v. Byron Jackson, Inc.* (1984) 161 Cal.App.3d 402, 409.)  But the BONY parties do not attempt to argue that any such exception applies, nor would we find such an argument persuasive.

In sum, in *Canyon View I*, the BONY parties had an opportunity to persuade this court that the MRL fees and costs provision does not apply to the instant action.  They failed to successfully do so,[11] and the trial court correctly rejected the BONY parties' efforts to relitigate the issue.

_____

[11] Canyon View has requested that we take judicial notice of the briefing in *Canyon View I* in an effort to establish that the BONY parties are raising now on appeal some of the same

28

### C. The Court Abused Its Discretion in Calculating Attorney Fees

We next consider the parties' arguments regarding purported error in the amount of attorney fees the court awarded. On appeal, both the BONY parties and Canyon View argue— albeit in different ways and with different desired outcomes— that the court erred when, in deciding the amount of attorney fees to award, the court failed to properly assess the specific work Canyon View's attorneys performed in the instant action and *Canyon View I*.

Canyon View argues the court improperly imported the quartering approach from the Lakeview action, an approach *Canyon View II* deemed an abuse of discretion and that, in any event, is not based on an analysis of the evidence presented in this action.

The BONY parties' cross-appeal argues that, even if the MRL entitles Canyon View to fees, the court erred by awarding fees for work that was not reasonable and necessary to protecting rights that arose under the MRL. Specifically, the BONY parties argue that, for various reasons, much of the work for which

---

arguments they raised in *Canyon View I*. But this is not germane to our analysis on appeal; regardless of the basis the BONY parties identified in arguing in *Canyon View I* that the instant action does not arise under the MRL, we decided this issue in *Canyon View I*, and will not revisit it, whether or not the BONY parties urge us to do so on some basis not previously argued. Nor need we take judicial notice of the briefing in order to conclude that *Canyon View I*'s holding encompasses the issue the BONY parties are currently attempting to relitigate. Accordingly, we deny this part of Canyon View's request for judicial notice.

Canyon View sought fees was performed after all clouds on title had been lifted, and that only work performed before that point can be a potential source of an attorney fees award under the MRL.

We consider these arguments in turn below.

**1.** ***The Court Erroneously Grafted the Lakeview Action Approach in Awarding Amounts in the Instant Action***

**a. NWF fees for prejudgment and *Canyon View I* work**

In the order on appeal, the court expressly states that, based on the same concerns the court set forth in deciding the second fees motion in the Lakeview action, the court is applying the Lakeview action quartering analysis as a means of calculating the fees award for prejudgment and *Canyon View I* work in the instant action. But at least some of the court's concerns related to the NWF supporting documentation and Norminton declarations in the Lakeview action are inapplicable to the supporting NWF documentation and Norminton declaration in the instant action. Specifically, the court voiced concerns in the Lakeview action as to whether the billing records and declarations provided a reliable, credible basis on which the court could conclude the work they described had been performed *in the Lakeview action*, rather than in some other Canyon View action. These concerns arose when the initial Norminton declaration in the Lakeview action characterized numerous entries in the NWF billing records as reflecting work on the Lakeview action only, although it was subsequently established (and Norminton subsequently admitted) the entries actually related to other actions. "After the court called into

30

question the credibility of both the NWF billing records and the Norminton declaration—specifically with respect to the issue of whether the fee[s] request reflected only work on the Lakeview action—the court did not have before it what it regarded as sufficiently reliable evidence to conclude what portion of the requested fees was truly recoverable in the Lakeview action." In the instant action, by contrast, the court voiced no such concerns about the credibility of the supporting documentation. Nor do the NWF billing records or Norminton declaration in the instant action contain numerous entries erroneously characterized as attributable to the instant action.[12]

Moreover, even if the court had similar concerns in the instant action and/or the evidence in this action supported such concerns, the court would still have acted outside the scope of its discretion in adopting the quartering approach used in the Lakeview action for all the same reasons we cite in *Canyon View II*: Namely, there is no "'reasonable basis" for such an approach in this action, just as there was not in the Lakeview action. (*Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 101; see *ibid*. ["[there must be] a reasonable basis for the trial court's reduction of the lodestar amount"].) Specifically, because nothing suggests the amounts requested in the instant action (or the Lakeview action) represented *all*

---

[12] The BONY parties do not argue that the lone erroneous entry in Canyon View's documentation—for .25 hours—provides a basis on which the court could have called into question the overall reliability of the supporting documents and Norminton declaration in the instant action. Nor would we find such an argument persuasive.

work on all four actions consolidated in *Canyon View I*, there is a "lack of correlation" between any concerns about the billing records including entries that overlap with the other three actions and the quartering approach the court employed. (See *Mountjoy, supra,* 245 Cal.App.4th at p. 281 [an across-the-board "reduction in hours claimed" based on flawed entries, "without any correlation shown to the number of hours claimed on the flawed entries, is arbitrary" and an abuse of discretion].)

Finally, in calculating the fees the BONY parties owe Canyon View, the court also appears to have applied its quartering approach to the fees request numbers and evidence Canyon View submitted *in the Lakeview action*, not the instant action. In so doing, the court based its fees award on evidence not properly before it regarding work performed in a separate action. It again did not "engag[e] in an explicit analysis of the specific work performed or fees requested [in the instant action]"—the same error we identified in the unpublished portion of *Canyon View I.* Thus, the amount of the fees award in the instant action for NWF's prejudgment work and work on *Canyon View I* reflects an abuse of discretion, because it was based entirely on evidence in a separate action, not on any analysis of the work Canyon View claims its counsel performed in the instant action, and because the court employed an approach to calculating the amount that has no reasonable basis.[13]

_____

[13] Because we so conclude, we need not address the argument that the award was void as beyond the scope of our instructions on remand. (See *Hampton v. Superior Court* (1952) 38 Cal.2d 652, 655 ["[t]he trial court is empowered to act only in accordance with the direction of the reviewing court; action which does not conform to those directions is void"].)

### b.     Hoffman fees

In using the quartering approach from the Lakeview action in this way, the trial court repeated another error from the Lakeview action regarding the fees Canyon View sought for the work of attorney Hoffman.  Namely, although the court approved Hoffman's hourly billing rate and failed to identify any concerns or issues with the number of hours Hoffman claimed to have spent working on the instant action, the court failed to include in its fees award any amount attributed to (or that one could imply is attributable to) Hoffman's work.  The court did this in the Lakeview action as well, and in *Canyon View II*, we deemed it an abuse of discretion because the court had wholly failed to take issue with or even address any of the specific tasks outlined in Hoffman's documentation or the hours spent on them.  The award of $0 for attorney Hoffman's work in this case thus reflects an abuse of discretion for the same reasons, outlined in *Canyon View II*, that the court's award of $0 attributable to Hoffman's work in the Lakeview action constituted an abuse of discretion.[14]

The BONY parties argue that certain work Hoffman performed needed to be "redone," resulting in Canyon View filing an errata to its second fees motion and supporting filings,

---

[14] To the extent the court concluded that its quartered version of NWF's appellate fees was in lieu of any recovery for fees charged by Hoffman for *Canyon View I*, such an approach requires an implicit finding that Hoffman's fees for work on *Canyon View I* were either unreasonable or excessive, which is " 'entirely lacking in evidentiary support' " and would thus also be an abuse of discretion as well.  (*Hanna v. Mercedes-Benz USA, LLC* (2019) 36 Cal.App.5th 493, 507.)

and thus that the lack of any award attributable to Hoffman's work reflects the court "properly discount[ing]" Hoffman's fees. (Boldface, capitalization & underscoring omitted.)  This argument pertains only to work Hoffman performed in connection with the second fees motion, the court's approach to which, as we discuss below, does not appear to have included any sort of consideration for the quality of Hoffman's work or its needing to be "redone."  To the extent the court is concerned about this, it is certainly a factor the court is entitled to consider on remand in assessing the evidence submitted in the instant action regarding Hoffman's work and in calculating what amount of fees it should award for that work.

### c. Work on first and second fees motions

The court did not apply the quartering approach from the Lakeview action to calculate the fees award for work on the first and second fees motions in the instant action.  But the court did base the amounts it awarded for this work in the instant action on what was awarded in the Lakeview action, rather than considering the evidence presented in the instant action.  The court awarded the same amount in both actions for work on the first fees motion, despite the fact that the amount Canyon View requested for this work in the Lakeview action and the amount it requested in the instant action were different.  The award for work on the second fees motion uses the award amount for work on the second fees motion in the Lakeview action as a baseline, then reduces it to account for the fact that the parties were ordered to provide supplemental briefing regarding the second fees motion in the Lakeview action, but not the instant action.  The requests for fees from work on the second fees motions in the

two cases were different.  By simply using the fees motion award amounts from the Lakeview action in the instant action in these ways, the court eschewed an actual analysis of the work Canyon View claims to have performed on these motions in the instant action.  It thereby abused its discretion.

### 2. *On Remand, the Court Should Calculate a Reasonable Fees Award Based on the Evidence in the Instant Action Only*

We next consider how to instruct the trial court to proceed upon remand.  In addressing this issue in the Lakeview action, we encountered a difficulty not present here:  Namely, that the court had implicitly found the billing records and attorney declarations supporting the fees request to be not credible.  Under such circumstances, given the deference we must show to trial court credibility determinations, we were unable to instruct the trial court to work with the documentation supporting the fees request in fashioning an appropriate award following remand.

Here, by contrast, the court did not question the credibility of the NWF billing records or Norminton declaration as a basis for calculating the fees award in the instant action.  Canyon View has therefore provided the information the trial court needs to perform a lodestar analysis and calculate a reasonable award of attorney fees:  hourly attorney fee rates for both NWF and Hoffman (fees the court has already found reasonable) and evidence of the type and amount of legal work these attorneys claim to have performed in the instant action.  Therefore, on remand, we reiterate our instruction from *Canyon View I* that the court is to conduct a lodestar analysis and calculate a reasonable fees award based on the documentation of work NWF and/or

Hoffman performed in the instant action and in the portion of *Canyon View I* attributable to the instant action.

### 3. *BONY's Argument Regarding Continuing Necessity of Litigation as a Factor in Calculating Reasonable Fee Amount*

The BONY parties argue in their cross-appeal that, in calculating any fee amount, the court should consider the extent to which, at various points throughout the proceedings, continuing litigation remained necessary to vindicate Canyon View's MRL-based rights. The BONY parties are correct that, because the MRL fees and costs provision only authorizes the recovery of reasonable fees incurred incident to litigation efforts necessary to perfect MRL-based rights, fees are recoverable under the MRL only to the extent they are for work that is reasonably necessary to vindicate an MRL-based right.[15] But the BONY parties are incorrect that some portion of this action was not necessary in this way.

The BONY parties point to the December 2016 notice of rescission they recorded after the litigation began and disclaimers of interest contained in litigation filings. But neither

---

[15] Consistent with this, in *Canyon View II* and the unpublished portion of *Canyon View I*, we encouraged the trial court to consider the continuing necessity of the action throughout the litigation in assessing the fee amount recoverable under the MRL. For example, in *Canyon View I*, we noted that "[w]e share[d] the trial court's concerns that the proceedings may have been more extensive than necessary [in the Lakeview action], given that, for example, proceedings in the Lakeview action continued for several months after Lakeview filed a post-litigation reconveyance and quitclaim deed."

36

provides Canyon View with a chain of title free from confusion about whether any encumbrances remained on the mobilehome after Canyon View bought it. To the contrary, the notice of rescission BONY recorded asserts the continuing validity of the first deed of trust. And because nothing in the record suggests the litigation filings containing the disclaimers at issue were recorded in public title records, they cannot remove a cloud in such public records.

The BONY parties argue that the language in the notice of rescission does not change the fact that, as the BONY parties acknowledged in their disclaimers during litigation, they had no legally viable interest in the mobilehome, nor were they pursuing any rights under the first deed of trust. But in the context of assessing whether MRL attorney fees can be recovered, clouds on title need not be based on an actual, *legally viable* claim or encumbrance. An MRL-based abandonment sale necessarily extinguishes any pre-existing lien on a property, but recordings regarding such a lien can still affect the marketability of title to the property. The MRL implicitly acknowledges this in that it funds litigation efforts of an MRL-sale purchaser to obtain a quiet title judgment even after the statute has, by operation of law, quieted title in the purchaser's favor. The situation throughout the BONY action—even after the notice of rescission and disclaimers the BONY parties identify—is thus one the MRL envisioned: one in which public records continue to leave some doubt as to who has an interest in the mobilehome, even though an MRL sale has extinguished all such interests. The notice of rescission and disclaimers thus do not present a basis on which the court should have limited the reasonable fees recoverable under the MRL.

37

Finally, to the extent the BONY parties' argument on appeal encompasses the position that any work performed after Canyon View prevailed in its quiet title action is automatically unnecessary to vindicate an MRL-based right, we reject it. The primary MRL-based right at issue in the litigation below was, of course, Canyon View's right to hold title to the home, free and clear of any cloud created by prior liens or recordings. But after Canyon View became the "prevailing party" in the instant action arising out of the MRL, Canyon View also had a right to collect attorney fees under section 798.85, to the extent Canyon View also established such fees were reasonable and necessarily incurred. Because section 798.85 is part of the MRL, Canyon View's right to collect attorney fees thereunder is an MRL-based right. Further litigation efforts to perfect *that* right— for example, work on the first and second fees motion and the *Canyon View I* appeal—were thus also necessary to vindicate an MRL-based right, and those litigation efforts arise out of the MRL.

Therefore, at no point did the instant action, the *Canyon View I* appeal, or the first and second fees motions become unnecessary to perfect MRL-based rights.

This does not mean the court must accept all work in the supporting documentation as necessary in the sense of efficiency, however. It remains within the broad discretion of the trial court to assess the reasonableness of the time taken to perform work and the work performed. (See *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1096 [reasonableness of attorney fees is within the discretion of the court based on consideration of a number of factors, including, " 'the nature of the litigation, its difficulty, the amount involved, the skill required in its handling,

38

the skill employed, the attention given, the success or failure, and other circumstances in the case' "].)  Canyon View has, for example, raised arguments that the BONY parties took an overly aggressive litigation position, and that Canyon View successfully moved to compel discovery responses from the BONY parties, resulting in sanctions against them.  The court remains free to consider these and any other aspects of the record in this action to craft a reasonable amount of attorney fees.

In sum, our decision does not limit the court's broad discretion to assess whether attorney fees requested are reasonable, so long as (1) the court exercises that discretion based on evidence of the work performed in the instant action and the related portion of *Canyon View I*, not in another action; (2) such evidence provides a reasonable basis for any reduction in the fee amount the court deems appropriate; and (3) the court does not adjust the fees award amount based on a finding or view that the legal work performed was insufficiently tethered to vindicating an MRL-based right in this case.[16]

---

[16] In an unpublished opinion filed today deciding an appeal from another case involving Canyon View and MRL attorney fees, *Canyon View Limited v. Nationstar Mortgage LLC* (Oct. 26, 2023, B312642), the appellant raises some arguments similar to those the BONY parties raise here regarding the necessity of the work for which a party seeks MRL fees and costs as a factor in assessing the reasonable amount of fees and costs recoverable. Case No. B312642 is from an attorney fees and costs order in proceedings that, unlike the instant matter, were not involved in the *Canyon View I* appeal, and the trial court did not implement the erroneous quartering approach it applied in the instant action and the Lakeview action.  We thus reach a different result in case No. B312642 than we do here in some respects.

39

### D. The Court Did Not Err in Concluding Canyon View Was Entitled To Recover Costs

The BONY parties next argue that the court abused its discretion in awarding any costs. They cite Code of Civil Procedure section 761.030, which modifies the general rules regarding costs set forth in Code of Civil Procedure sections 1032 and 1034 and accompanying rules. Specifically, Code of Civil Procedure sections 1032 and 1034 permit the trial court, in its discretion, to award costs under certain circumstances. Under Code of Civil Procedure section 761.030, subdivision (b), even where those circumstances are present, "[i]f the defendant [in a quiet title action] disclaims in the answer any claim, or suffers judgment to be taken without answer, the plaintiff shall not recover costs." (Code Civ. Proc., § 761.030, subd. (b).) This exception to the generally applicable rules regarding costs is inapplicable here, because the court awarded costs in the instant action under the MRL fees and costs provision, to which Code of Civil Procedure section 761.030 does not create an exception.

In arguing we should nevertheless rely on this exception, the BONY parties reference the unpublished portion of *Canyon View I* affirming the trial court's denial of any costs in the Ocwen action based in part on the "spirit and intent" of Code of Civil Procedure section 761.030. But any costs awarded in the Ocwen action would have been awarded under Code of Civil Procedure sections 1032 and 1034, because, unlike here, the MRL fees and costs provision did not apply in the Ocwen action. The BONY parties' reference to this aspect of our opinion in *Canyon View I* thus does not assist their argument.

40

The BONY parties raise no argument as to why the costs awarded should not be recoverable under the MRL fees and costs provision. Accordingly, we affirm the costs award.

## DISPOSITION

The order on Canyon View's second fees motion is reversed to the extent the order is based on an improper measure of attorney fees. Upon remand, the court is instructed to enter a new order awarding Canyon View a reasonable amount of attorney fees. The court must make this determination based on evidence regarding the legal work performed in the instant action, not other actions.

In all other respects, we affirm, including specifically the order's award of $4,010.47 in costs to Canyon View.

Canyon View is awarded its costs on appeal.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:



CHANEY, J.



BENDIX, J.

41